# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

MICHIGAN DEPARTMENT OF ENVIRONMENT,
GREAT LAKES, AND ENERGY and ATTORNEY
GENERAL DANA NESSEL, on behalf of the People
of the State of Michigan

      Plaintiffs,

  v.

GERALD R. FORD INTERNATIONAL AIRPORT
AUTHORITY,

      Defendant.

_____

GERALD R. FORD INTERNATIONAL AIRPORT
AUTHORITY,

      Third-Party Plaintiff,

  v.

3M COMPANY;
AGC CHEMICALS AMERICAS INC.;
ARCHROMA U.S., INC.;
ARKEMA, INC.;
BASF CORPORATION;
BUCKEYE FIRE EQUIPMENT COMPANY;
CARRIER GLOBAL CORPORATION;
CHEMDESIGN PRODUCTS, INC.;
CHEMGUARD, INC.;
CLARI ANT CORPORATION;
CORTEVA, INC.;
DUPONT DE NEMOURS, INC.;
DYNAX CORPORATION;
EIDP, Inc., F/K/A E.I. DUPONT DE
NEMOURS AND COMPANY;
KIDDE PLC, INC.;
NATION FORD CHEMICAL COMPANY;

Civil Action No. 24-cv-520


**NOTICE OF REMOVAL BY
THIRD-PARTY
DEFENDANTS TYCO FIRE
PRODUCTS LP AND
CHEMGUARD, INC.**

NATIONAL FOAM, INC.;
THE CHEMOURS COMPANY;
TYCO FIRE PRODUCTS LP; and
UTC FIRE & SECURITY AMERICAS
CORPORATION, INC., and
ABC CORPORATIONS 1-10 (Names
Fictitious)

Third-Party Defendants.

Third-Party Defendants Tyco Fire Products LP and Chemguard, Inc. (collectively "Tyco" unless identified individually by full name), by undersigned counsel, hereby give notice of the removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the Circuit Court for the Seventeenth Judicial Circuit in and for Kent County, Michigan (the "State Court"), to the United States District Court for the Western District of Michigan, Southern Division.  As grounds for removal, Tyco alleges as follows on personal knowledge as to its own conduct and status and on information and belief as to all other matters:

**PRELIMINARY STATEMENT**

1.      Third-Party Plaintiff, Gerald R. Ford International Airport Authority (the "Authority"), seeks to hold Tyco and certain other Third-Party Defendants liable based on their alleged conduct in designing, manufacturing, marketing, distributing, and/or selling aqueous film-forming foam ("AFFF") that the Authority alleges has resulted in contamination.

2.      Specifically, the Authority alleges that Third-Party Defendants' AFFF contained per- and polyfluoroalkyl substances ("PFAS"), including perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS"), and that the use of these substances caused contamination of the Authority's lands, properties, facilities, infrastructures, and resources (collectively, the "Property").

3.      At least some of the AFFF that gives rise to the Authority's claims has been manufactured by a select group of suppliers (including Tyco) in accordance with the military's rigorous specifications ("MilSpec AFFF").  Under the federal "government contractor" defense recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), Tyco is immune to tort liability for its design and manufacture of MilSpec AFFF and its provision of warnings for the product.  Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), Tyco is entitled to remove this action in order to have its federal defense adjudicated in a federal forum.  *See Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010) (citation omitted); a*ccord Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 810–15 (3d Cir. 2016).  Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed."  *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

## BACKGROUND

4.      This action was originally commenced on or about September 8, 2023 in the State Court, bearing Case No. 2023-08850-CE. The Authority's Third-Party Complaint was filed on April 15, 2024.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 102(b)(1) and 1441(a) because the State Court is located within the Western District of Michigan, Southern Division.

5.      Chemguard, Inc. was served with the Third-Party Complaint on April 22, 2024. Tyco Fire Products LP has not been served. This Notice of Removal is timely filed in accordance with 28 U.S.C. § 1446(b).

6.      Tyco is not required to notify or obtain the consent of any other parties to this action in order to remove this action as a whole under Section 1442(a)(1).  *See, e.g., Durham v.*

*Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Hilbert v. McDonnell Douglas Corp.,* 529 F. Supp. 2d 187, 195 (D. Mass. 2008).

7.      The Authority generally alleges that the Third-Party Defendants, including Tyco, have designed, manufactured, marketed, distributed, and/or sold AFFF, which contain PFAS. (Ex. A, Third-Party Complaint ¶¶ 22, 31). The Authority alleges that the use of AFFF has caused contamination of the Property. (*Id.* ¶¶ 9–10, 46). The Authority further alleges that it will incur costs associated with the investigation, remediation, and monitoring of the PFAS contamination of the Property. (*Id.* ¶ 1, 11 Prayer for Relief at 27).

8.      The Authority seeks to recover costs and damages associated with the alleged PFAS contamination of the Property. (*Id.* ¶¶ 1, 11, 63, Prayer for Relief at 27). In addition to damages for past and future costs of addressing contamination of the Property, the Authority also seeks consequential damages, pre- and post-judgement interest, and attorneys' fees. (*Id.*, Prayer for Relief at 27-28).

9.      The Authority asserts claims against all Third-Party Defendants for contribution under Part 201 of the Michigan Natural Resources and Environmental Protection Act ("NREPA") (*id.* ¶¶ 77–84); cost-recovery under Part 201 of NREPA (*id.* ¶¶ 85–91); indemnification (*id.* ¶¶ 92–102); strict products liability for design defect (*id.* ¶¶ 103–118); strict products liability for failure to warn (*id.* ¶¶ 119–129); negligence (*id.* ¶¶ 130–136); and trespass (*id.* ¶¶ 137–142).

10.     Apart from the Third-Party Complaint, no other process, pleadings, or orders have been served upon Tyco to date. *See* 28 U.S.C. § 1446(a). Pursuant to 28 U.S.C. § 1446(d), Tyco is serving a copy of this Notice of Removal upon all other parties to this case and is also filing a copy with the Clerk of the State Court.

11.     By filing a Notice of Removal in this matter, Tyco does not waive the rights of any Third-Party Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue; and Tyco specifically reserves the rights of all Third-Party Defendants to assert any defenses and/or objections to which they may be entitled.

12.     Tyco reserves the right to amend or supplement this Notice of Removal.

### REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(a)(1).

13.     Removal here is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides for removal of an action relating to the removing party's acts undertaken at the direction of a federal officer.  Removal is appropriate under this provision where the removing party establishes that: (a) it is a "person" that has "act[ed] under" the United States, its agencies, or officers; (b) the complaining party's claims are "for or relating to" the removing party's acts under color of federal office; and (c) the removing party raises a colorable federal defense.  *Bennett*, 607 F.3d at 1085; *accord Mesa v. California*, 489 U.S. 121, 124–25, 129–31, 133–35 (1989); *Papp*, 842 F.3d at 812.

14.     Section 1442(a)(1) "must be liberally construed."  *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007) (citations omitted).  The statute "is intended to provide 'broad' removal rights to Defendants working with the federal government."  *Nessel v. Chemguard, Inc.*, 2021 WL 744683, at *2 (W.D. Mich. Jan. 6, 2021) (citing *Willingham v. Morgan*, 395 U.S. 402, 406 (1969)); *accord Bennett*, 607 F.3d at 1084 (noting "the broad scope of the federal officer removal statute").  Removal rights under the federal officer removal statute are much broader than under the general removal statute, 28 U.S.C. § 1441(a).  Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law."  *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999).  This

is because Section 1442(a)(1) protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citation omitted).  This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham*, 395 U.S. at 407; *see Durham*, 445 F.3d at 1252.  To the contrary, Section 1442 as a whole must be "liberally construe[d]" in favor of removal.  *Papp*, 842 F.3d at 812 (alterations in original) (internal quotation marks omitted).

15.     All requirements for removal under Section 1442(a)(1) are satisfied where, as here, the notice of removal alleges that the complaining party's injuries have been caused at least in part by MilSpec AFFF.  *See, e.g.*, *Nessel*, 2021 WL 744683, at *3 (denying motion to remand and finding that federal officer removal was proper in a lawsuit against Tyco and other manufacturers of MilSpec AFFF); *Ayo v. 3M Co.*, 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (same).  The court overseeing the *In re Aqueous Film-Forming Foams Products Liability Litigation* multi-district litigation (the "MDL") has also found on multiple occasions that removal under Section 1442(a)(1) is proper where the notice of removal alleges that plaintiff's injuries have been caused, at least in part, by MilSpec AFFF.  *See In re AFFF Prods. Liab. Litig.*, 2019 WL 2807266, at *2–3 (D.S.C. May 24, 2019) ("MDL Order 1"); Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 320 (D.S.C. Sept. 27, 2019) ("MDL Order 2"), at 3–5; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019) ("MDL Order 3"), at 3–6.  Given its experience with the claims and defenses in AFFF litigation, the MDL Court's holdings clearly demonstrate that this case, too, has been properly removed to federal court.[1]

---

[1] Following removal, Tyco intends to designate this action for transfer to the MDL.

16.     Removal of the entire action is appropriate if *any* claim in the case is subject to removal under Section 1442(a)(1).  *Ruppell v. CBS Corp.*, 701 F.3d 1176, 1182 (7th Cir. 2012).  "[T]hird-party defendants may remove under § 1442(a)(1)."  *Golden v. N.J. Inst. of Tech.*, 934 F.3d 302, 311 n.13 (3d Cir. 2019).

A.     **MilSpec AFFF**

17.     The United States Naval Research Laboratory developed AFFF in the 1960s to quickly suppress and extinguish liquid fuel fires, which are an ever-present risk in aviation and military environments.  Since at least the early 1970s, following catastrophic fires aboard the aircraft carriers USS *Forrestal* in 1967 and USS *Enterprise* in 1969,[2] the United States military has used MilSpec AFFF on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to put out fires, save lives, protect property, and train its personnel.  Pursuant to requirements of the Federal Aviation Administration, MilSpec AFFF is also widely used to fight fires at larger civilian airports, known as "Part 139" airports.  The Naval Research Laboratory has described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[3]

18.     The manufacture and sale of MilSpec AFFF are governed by rigorous military specifications created and administered by Naval Sea Systems Command ("NavSea"), a unit of the Department of Defense ("DoD").  The applicable specification, Mil-F-24385, was first

---

[2] *See* Press Release 71-09r, U.S. Naval Research Lab., Navy Researchers Apply Science to Fire Fighting (Oct. 23, 2009), https://tinyurl.com/y2jq4q4w.

[3] U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.

promulgated in 1969, and has been revised a number of times since then.[4] The MilSpec designates NavSea as the agency responsible for applying these specifications and determining whether AFFF products satisfy the MilSpec's requirements. NavSea engages in detailed monitoring and supervision of contractors that manufacture MilSpec AFFF. All MilSpec AFFF products must be qualified for listing on the applicable Qualified Products List ("QPL") prior to procurement by the military or Part 139 airports required to use MilSpec AFFF. Prior to such listing, NavSea personnel examine and test a manufacturer's products and approve them to be in conformance with specification requirements.[5] After a product is added to the QPL, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[6] NavSea reserves the right to perform any of the quality assurance inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements.

19. From its inception until 2019, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants." All fluorocarbon surfactants are PFAS, and that category includes PFOA, PFOS, and their chemical precursors—some of the very compounds at issue in the Third-Party Complaint here. That requirement was in force for virtually the entire time period at issue in the Third-Party Complaint. In 2019 the MilSpec removed the express requirement of "fluorocarbon" surfactants, but the DoD has acknowledged that no AFFF product can satisfy the stringent performance requirements of the MilSpec without the use of PFAS-

---

[4] The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.

[5] Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

[6] *Id.*

containing surfactants.  Even today, the AFFF MilSpec expressly contemplates the presence of PFOA and PFOS (subject to recently imposed limits) in AFFF formulations.   Indeed, the AFFF MilSpec recognizes that it is not yet technically feasible for manufacturers to completely eliminate PFOA and PFOS "while still meeting all other military specification requirements."

20.       All MilSpec AFFF is military equipment, no matter where or by whom it is used. Tyco and other manufacturers of MilSpec AFFF have designed, manufactured, and/or supplied MilSpec AFFF under contracts with the U.S. military.

21.        "Part 139" airports are those serving scheduled passenger flights by nine passenger (or larger) aircraft or unscheduled passenger flights by 31 passenger (or larger) aircraft. *See* 14 C.F.R. § 139.1 (2019).  Since at least 2006, the Federal Aviation Administration has required Part 139 airports to use MilSpec AFFF.

22.       The Gerald R. Ford International Airport (the "Airport") is a Part 139 airport that, since at least 2006, has used and discharged MilSpec AFFF—including MilSpec AFFF manufactured and distributed by Tyco —to extinguish live fires, respond to potential fire incidents, and train personnel on how to extinguish liquid fuel fires.  Thus, the Airport has used AFFF that, under military specifications, *must* contain PFAS.

23.       The Airport also is and has been the site of military operations.  For instance, in 2008 military aircraft made over 3,000 landings and takeoffs at the Airport.  The Airport has been a training site for military air wings including those at Selfridge Air Force Base in Mount Clemens, Michigan and the Wisconsin Air National Guard base in Milwaukee.  In connection with military operations at the airport, military personnel have used and discharged MilSpec AFFF—including MilSpec AFFF manufactured and distributed by Tyco—to extinguish live fires, respond to potential fire incidents, and train personnel on how to extinguish liquid fuel fires.  The PFAS

contamination about which the Authority complains in its Third-Party Complaint arises at least in part from the use of MilSpec AFFF by military personnel at the Airport.

    **B.**    <u>**All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied.**</u>

        *1.*    *The Requirement that the Removing Party Be a Person that "Acted Under" Federal Authority Is Satisfied.*

24.    Tyco Fire Products LP and Chemguard, Inc. (a limited partnership and corporation, respectively) each meet the definition of a "person" under the statute. For purposes of § 1442(a)(1), the term "person" includes "corporations, companies, associations, firms, [and] partnerships." *Papp*, 842 F.3d at 812 (quoting 1 U.S.C. § 1); *accord Bennett*, 607 F.3d at 1085.

25.    "The words 'acting under' are broad." *Watson*, 551 U.S. at 147. The requirement that the removing party "acted under" federal authority is satisfied where, as here, a private contractor "help[s] the Government to produce an item that it needs." *Id.* at 153. "The assistance that private contractors provide federal officers goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks.´ *Id.* Courts routinely hold that the "acting under" requirement is satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it manufactured in compliance with government specifications. *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 255 (4th Cir. 2017).

26.    The requirement of "acting under" a federal officer is met here because the alleged PFAS contamination that is the focus of the Authority's claims stems in part from the use of MilSpec AFFF, a vital product manufactured by Tyco that otherwise "the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137. MilSpec AFFF is a mission-critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission-critical" and "life-saving product" used by all branches of the U.S.

armed forces and NATO members (internal quotation marks omitted)); *cf. Isaacson*, 517 F.3d at 137.  The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations."[7]  Accordingly, the military has long depended upon outside contractors like Tyco to develop and supply MilSpec AFFF, and in doing so Tyco and other manufacturers are unquestionably "acting under" federal officers for purposes of Section 1442(a)(1).  *See Nessel*, 2021 WL 744683, at *3 (noting, in action brought by the State of Michigan, that there was "no dispute that Defendants were 'acting under' a federal officer in manufacturing and providing MilSpec AFFF"); *Ayo*, 2018 WL 4781145, at *8–9; *see also* MDL Order 1, 2019 WL 2807266, at *2 (finding that the "acting under" requirement was satisfied because defendant demonstrated that it was manufacturing AFFF under the supervision of the U.S. military); MDL Order 2, at 3–5 (holding likewise in case involving MilSpec AFFF used at Part 139 airport); MDL Order 3, at 3–6 (same).  If Tyco and other manufacturers did not provide MilSpec AFFF, the government would have to manufacture and supply the product itself.

27.     In designing and manufacturing the MilSpec AFFF at issue, Tyco has not merely complied with federal regulations or other provisions of law.  *Compare Watson*, 551 U.S. at 151–53.  Military procurement specifications are not "regulations," and no law or regulation has required the use of PFAS in MilSpec AFFF.  Rather, in producing MilSpec AFFF Tyco has acted under the direction and control of federal officers.  Specifically, Tyco has acted in accordance with detailed specifications, promulgated by NavSea, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling.  Further, the AFFF products in question were

---

[7] Fulfilling the Roosevelts' Vision, *supra* n.3, at 37.

subject to various tests by NavSea before and after being approved for use by the military and for inclusion on the QPL maintained by the DoD.[8]

### 2.     The "Under Color Of Federal Office" Requirement Is Satisfied.

28.     The requirement that the lawsuit be "for or related to" the removing party's actions taken "under color of federal office" is satisfied when there is a "connection or association" between the removing party's challenged actions and the authority of federal office.  *Papp*, 842 F.3d at 813.  "The Supreme Court has indicated that the 'hurdle erected by this requirement is quite low.'"  *Nessel*, 2021 WL 744683, at *3 (quoting *Isaacson*, 517 F.3d at 137).[9]

29.     Here, the Authority alleges that the use of PFAS in AFFF manufactured by Tyco and others is the source of its injuries.  Tyco contends that the AFFF giving rise to the Authority's claimed injuries was MilSpec AFFF, and that the use of PFAS in MilSpec AFFF was required by the applicable military specifications.  (The Authority concedes as much.  *See* Third-Party Complaint ¶ 65.)  As a result, the Authority's claims against Tyco are clearly connected to Tyco's acts taken under color of federal office.  *See Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'casual connection' between the use of PFCs in AFFF and the design and manufacture of AFFF for the government."); MDL Order 1,  2019 WL 2807266, at *3 (element satisfied where "[Plaintiff]'s claims arise out of use of AFFF products that it claims Tyco manufactured and sold, and for which the U.S. military imposes MilSpec standards."); MDL Order 2, at 5 (element

---

[8] *See* Dep't of Defense, SD-6, *supra* n.5, at 1.

[9] The "acting under" and "under color of" prongs overlap.  Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction."  *Albrecht*, 2011 WL 5109532, at *5.

satisfied where AFFF products, "for which the military imposes MilSpec standards," were the alleged cause of plaintiff's injuries); MDL Order 3, at 5–6 (same).

### 3. The "Colorable Federal Defense" Requirement Is Satisfied.

30. The requirement of a "colorable federal defense" is satisfied by Tyco's assertion of the government contractor defense.

31. For purposes of removal, the removing party's colorable federal defense need only be plausible, and a district court is not required to determine its validity at the time of removal. *Bennett*, 607 F.3d at 1089; *see also Nessel*, 2021 WL 744683, at *4. The removing party need only show that its government contractor defense is colorable; that is, "that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'" *Papp*, 842 F.3d at 815 (alteration in original) (citation omitted). "A defendant 'need not win his case before he can have it removed.'" *Id.* (quoting *Willingham*, 395 U.S. at 407); *see also Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." (citation omitted)). At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo*, 771 F.3d at 116; *see also Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage. Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense." (internal citation omitted)). Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the

opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (alteration in original) (citation omitted).

32. Under the government contractor defense, the defendant is not liable for the design, manufacture, or warnings of equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512. Tyco has satisfied these elements for purposes of removal.

33. The requirement of "reasonably precise specifications" can be met by evidence showing either (a) that the government's participation in the design of the product "amount[ed] to more than a rubber stamping," or (b) that the government continued to purchase or use a product after the government became aware that the product contained the alleged defect. *Ramey v. Martin-Baker Aircraft Co. Ltd.*, 874 F.2d 946, 950 (4th Cir. 1989). NavSea participated in the design of MilSpec AFFF, and its role was not a mere "rubber stamping." It created (and has updated) detailed specifications governing the product's formulation, performance, testing, storage, inspection, packaging, and labeling. Up to 2019, those specifications were "reasonably precise" in requiring the use of PFAS. As noted earlier, until that time the specification expressly required that MilSpec AFFF contain "fluorocarbon surfactants," all of which are members of the PFAS family. Even since that express requirement was removed from the specification, the use of PFAS has been implicitly mandated because PFAS-containing surfactants are the only kind that allow AFFF to meet the performance requirements of the specification. In addition, in the past and continuing to the present, the DoD has purchased and used MilSpec AFFF with awareness of the fact that the product contained PFAS (including PFOA) and of the risks allegedly associated

14

with PFAS in the product.  *Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of [PFAS]-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design.").

34.     With respect to the second requirement, Tyco's MilSpec AFFF products have conformed to the MilSpec and have appeared on the DoD QPL, which could have happened only if NavSea had first determined that they conformed to the MilSpec.  *See id.* at *13 ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); MDL Order 1, 2019 WL 2807266, at *3 (finding that defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications").

35.     Regarding the third requirement, the government was sufficiently informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF.  The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand. Indeed, it is clear that the United States has long understood that AFFF contains PFAS and may contain or break down into PFOS and/or PFOA; that AFFF constituents can migrate through the soil and potentially reach groundwater; and that it has been reported that this may raise environmental or human health issues.[10]  For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from firefighting exercises are considered

_____

[10] *See, e.g.*, EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 1–6 (Nov. 4, 2002).

to have adverse effects environmentally."[11]  By no later than 2001, DoD was aware of data purportedly showing PFAS compounds in MilSpec AFFF to be "toxic" and "persistent."  In 2002, the United States Environmental Protection Agency issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining to alleged associations between PFOA and cancer.  More recently, in a November 2017 report to Congress, the DoD acknowledged the concerns raised by the EPA regarding PFOS and PFOA.  Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires."[12]  Indeed, NavSea continues to require that MilSpec AFFF contain "surfactants," and recognizes that PFAS, including PFOS and PFOA, will be present (subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[13]  If the government is already aware of the relevant product hazards, no warning by the manufacturer to the government is required.  *See Ayo*, 2018 WL 4781145, at *14; MDL Order 1, 2019 WL 2807266, at *3 ("As to whether [defendant] adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, [defendant] points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . ."); *see also Albrecht*, 2011 WL 5109532, at *5

---

[11] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), https://apps.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

[12] Dep't of Defense, *Aqueous Film Forming Foam Report to Congress* 1–2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

[13] *See* MIL-PRF-24385F(SH), Amendment 4, § 6.6 & Tables I, III (2020), https://quicksearch.dla.mil/qsDocDetails.aspx?ident_number=17270; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'" (citation omitted)).

36. At minimum, these facts constitute colorable evidence that NavSea "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks. *See Twinam v. Dow Chem. Co.* (*In re "Agent Orange" Prod. Liab. Litig.*), 517 F.3d 76, 90 (2d Cir. 2008). Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies. *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at *13.

37. Tyco's use of PFAS in MilSpec AFFF was required by military specifications. By seeking to impose tort liability on Tyco for alleged injuries to the Authority that were caused in whole or in part by Tyco's compliance with military specifications, the Authority is attempting to use state tort law to attack design choices dictated by the military. The government contractor defense precludes such an attack. *See Boyle*, 487 U.S. at 509.

38. In the MDL, the court has found based on an extensive factual record that the government contractor defense asserted by Tyco and other MilSpec AFFF manufacturers presents genuine issues of fact for trial. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357, at *12, 15 (D.S.C. Sept. 16, 2022). A defense that presents triable issues is by definition better than merely "colorable."

WHEREFORE, Tyco hereby removes this action from the Circuit Court for the Seventeenth Judicial Circuit in and for Kent County, Michigan, to this Court.

Respectfully submitted,

Dated: May 20, 2024

*/s/* Nicholas J. Ellis
Nicholas J. Ellis
Foley & Lardner LLP
500 Woodward Ave Ste 2700
Detroit, MI 48226
Telephone: (313) 234-7168
Email: nellis@foley.com

*Attorneys for Third-Party Defendants Tyco Fire Products LP and Chemguard, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Nicholas J. Ellis, hereby certify that on May 20, 2024, I caused a true and correct copy

of the foregoing document to be filed via the Court's CM/ECF system, and a copy to be sent to the

following via U.S. Mail:

<u>Defendant/Third-Party Plaintiff</u>

Gerald R. Ford International Airport Authority
John A. Sheehan
Earth & Water LLC
1455 Pennsylvania Ave. N.W., Suite 400
Washington, DC  20004
(301) 980-5032
john.sheehan@earthandwatergroup.com

<u>Plaintiffs</u>

Michigan Department of Environment, Great Lakes, and Energy
Constitution Hall
525 West Allegan Street
P.O. Box 30473
Lansing, MI 48909

Attorney General Dana Nessel
Michigan Department of Attorney General
525 W. Ottawa Street
Lansing, MI 48933

<u>Third-Party Defendants</u>

3M Company
3M Center
St. Paul, MN 55144-1000

AGC Chemicals Americas, Inc.
55 E. Uwchlan Avenue, Suite 201
Exton, PA 19341

Archroma U.S., Inc.
5435 77 Center Dr. #10
Charlotte, NC 28217

Arkema Inc.
900 1st Avenue
King of Prussia, PA 19406

BASF Corporation
100 Park Avenue
Florham Park, NJ 07932

Buckeye Fire Equipment Company
110 Kings Road
Mountain, NC 28086

Carrier Global Corporation
13995 Pasteur Boulevard
Palm Beach Gardens, FL 33418

Chemdesign Products, Inc.
2 Stanton Street
Marinette, WI 54143

Clariant Corporation
4000 Monroe Road
Charlotte, NC 28205

Corteva, Inc.
974 Centre Road
Wilmington, DE 19805

DuPont de Nemours, Inc.
974 Centre Road
Wilmington, DE 19805

Dynax Corporation
103 Fairview Park Drive
Elmsford, NY 10523

EIDP, Inc.
974 Centre Road
Wilmington, DE 19805

Kidde PLC, Inc.
9 Farm Springs Road
Farmington, CT 06032

National Foam, Inc.
141 Junny Road
Angier, NC 27501

The Chemours Company
1007 Market Street
Wilmington, DE 19899

UTC Fire & Security Americas Corporation
3211 Progress Drive
Lincolnton, NC 28092


Dated:  May 20, 2024                                    /s/ Nicholas J. Ellis
                                                       Nicholas J. Ellis (P73174)