# Exhibit A

**STATE OF MICHIGAN**
**CIRCUIT COURT FOR THE 17ᵗʰ JUDICIAL CIRCUIT**
**KENT COUNTY**

MICHIGAN DEPARTMENT OF
ENVIRONMENT, GREAT LAKES, AND
ENERGY and ATTORNEY GENERAL DANA
NESSEL, on behalf of the People of the State of
Michigan,

        Plaintiffs,

v.

GERALD R. FORD INTERNATIONAL
AIRPORT AUTHORITY,

        Defendant.

--------------------------------------------------------

GERALD R. FORD INTERNATIONAL
AIRPORT AUTHORITY,

        Third-Party Plaintiff,

v.

3M COMPANY;
AGC CHEMICALS AMERICAS, INC.;
ARCHROMA U.S., INC.;
ARKEMA INC.;
BASF CORPORATION;
BUCKEYE FIRE EQUIPMENT COMPANY;
CARRIER GLOBAL CORPORATION;
CHEMDESIGN PRODUCTS, INC.;
CHEMGUARD, INC.;
CLARIANT CORPORATION;
CORTEVA, INC.;
DUPONT DE NEMOURS, INC.;
DYNAX CORPORATION;
EIDP, INC., F/K/A E.I. DU PONT DE
  NEMOURS AND COMPANY;
KIDDE PLC, INC.;
NATIONAL FOAM, INC.;
THE CHEMOURS COMPANY;

Case No. 2023-08850-CE

HON. GEORGE JAY QUIST

Rec'd & Filed

APR 1 5 2024

KENT COUNTY
CIRCUIT COURT

1

TYCO FIRE PRODUCTS LP;
UTC Fire & Security, and
ABC CORPORATIONS 1-10 (Names Fictitious),

          Third-Party Defendants.

-----------------------------------------------------------

John A. Sheehan
Earth & Water Law LLC
1455 Pennsylvania Ave. N.W., Suite 400
Washington, DC 20004
(301) 980-5032
john.sheehan@earthandwatergroup.com
Temporary Michigan Bar No. P00349

-----------------------------------------------------------

### THIRD-PARTY COMPLAINT

Third-Party Plaintiff, Gerald R. Ford International Airport Authority ("Third-Party Plaintiff" or "the Airport" or "GFIA"), by and through its undersigned counsel, brings this third-party action against Third- Party Defendants, 3M Company, AGC Chemical Americas, Inc., Archroma US, Inc., Arkema Inc., BASF Corporation, Buckeye Fire Equipment Company, Carrier Global Corporation, ChemDesign Products, Inc., Chemguard, Inc., Clariant Corp., Corteva, Inc., DuPont De Nemours, Inc., Dynax Corp., E. I. DuPont De Nemours and Company, Kidde PLC Inc., National Foam Inc., The Chemours Company, FC, LLC, Tyco Fire Products, LP, and UTC Fire & Security Americas Corporation, and (collectively, "Third-Party Defendants"). Third-Party Plaintiff, based on information, belief, and investigation of counsel, alleges as follows:

### I. SUMMARY OF THE CASE

1. Third-Party Plaintiff, Gerald R. Ford International Airport Authority ("the Airport Authority") brings this action against Third-Party Defendants to recover the costs and damages it has incurred and likely will continue to incur as a result of the presence of per- and polyfluoroalkyl

substances ("PFAS") as alleged in the underlying Complaint by Plaintiffs, the Michigan Department of the Environment, Great Lakes and Energy and Attorney General Dana Nessel, on behalf of the People of the State of Michigan ("EGLE," "the State," or "the State of Michigan"). The Airport Authority also seeks to recover any and all past and future compensatory and/or consequential damages from the investigation, remediation, treatment, removal, disposal, and/or monitoring of the ongoing contamination, as well as diminished property value, attorneys' fees and costs, and all other damages available as a result of the actions and/or inactions of Third-Party Defendants. By bringing this Third-Party Complaint, the Airport Authority does not admit any liability on the underlying State of Michigan Complaint herein and reserves all defenses thereto.

2. Third-Party Plaintiff, Gerald R. Ford International Airport Authority, is a commercial airport in Cascade Township, located approximately 13 miles southeast of Grand Rapids, Michigan, located at 5500 44th Street SE, Grand Rapids, Michigan. The Airport Authority was formed under MCL § 259.139.

3. According to the underlying State of Michigan Complaint, PFAS, including perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS"), have been discovered in the water, soil and groundwater at the Gerald R. Ford International Airport, also referred to herein as "Airport Authority Property."

4. The State of Michigan has filed the following three lawsuits (collectively "State of Michigan PFAS Complaints") alleging environmental contamination and natural resources damages from PFAS compounds attributed, in part, to the Third-Party Defendants:

(1) *Nessel, et al., v. 3M, et al.,* C.A. No. 1:21-cv-00205,

(2) *Nessel, et al., v. Chemguard Inc., et al.,* C.A. No. 1:20-cv-01080), and

(3) *Nessel, et al., v. E.I DuPont, et al.,* C.A. No. 1:21-cv-00787).

3

5. PFAS are a group of man-made chemicals that include PFOA and PFOS. PFOA and PFOS have long been manufactured as components for Aqueous film-forming foam ("AFFF"), a product used to control and extinguish aviation, fuel, and other shallow spill fires at sites such as military bases, airports, petroleum refineries, and fire training centers. According to the State of Michigan PFAS Complaints, the Third-Party Defendants include manufacturers of long-chain C-8 PFAS chemicals and shorter chain C-6 PFAS chemicals.

6. According to the State of Michigan PFAS Complaints, PFOA and PFOS both are claimed to be toxic, persistent in the environment, resistant to biodegradation, move easily through soil and groundwater, and also allegedly pose a significant risk to environmental and human health and safety.

7. Upon information and belief, at various times throughout the 1960s to present date, Third-Party Defendants designed, manufactured, marketed, distributed, and/or sold PFOA, PFOS, the chemical precursors of PFOA and/or PFOS, and/or AFFF containing PFOA, PFOS, and/or their chemical precursors (collectively, "Fluorosurfactant Products") throughout the United States, including in Michigan.

8. At all relevant times upon information and belief, Third-Party Defendants knew, or reasonably should have known, about the inherent risks and dangers involved in the use of PFAS compounds in their products, including that both PFOA and PFOS are mobile in water, not easily biodegradable, highly persistent in the environment, and present risks to both human health and the environment. Nevertheless, Third-Party Defendants made a deliberate choice to manufacture, market, sale, and otherwise place Fluorosurfactant Products into the U.S. stream of commerce for decades, while knowing PFAS compounds would be inevitably released into the environment. Third-Party Defendants placed AFFF products for fire protection, training, and response activities,

4

into the stream of commerce knowing that even when used in the manners directed and intended by the manufacturer, a risk was posed to human health and the environment.

9. At all relevant times, Third-Party Plaintiff did not know, nor should it have reasonably known, of the ongoing contamination of its Airport Authority Property and resources through the use of Third-Party Defendants' Fluorosurfactant Products, as Third-Party Defendants did not disclose the toxic nature and harmful effects of their Fluorosurfactant Products.

10. As a result of Third-Party Defendants' unreasonable acts and omissions, according to the underlying State of Michigan Complaint, PFAS compounds have contaminated the Airport Authority Property, thereby subjecting Third-Party Plaintiff, its customers, employees, visitors, and the general public to the inherent danger of these chemicals. As the manufacturers and sellers of Fluorosurfactant Products, Third-Party Defendants are responsible for the PFAS contaminants at issue in the underlying Complaint related to the Airport Authority Property.

11. Through this action, Third-Party Plaintiff now seeks to recover all available damages arising from the underlying Complaint by the State of Michigan and damages caused by the actions or inactions of the Third-Party Defendants impacting the Airport Authority Property. Such damages may include, but are not limited to, the past and future incurred costs associated with the investigation, remediation, restoration, monitoring, and treatment of the Airport Authority Property.

5

## II. PARTIES TO THE THIRD-PARTY COMPLAINT

### A. THIRD-PARTY PLAINTIFF

12. The Airport Authority, formed under MCL § 259.139, has operated the Gerald Ford International Airport ("GFIA") located at 5500 44th Street SE, Grand Rapids, Michigan since 2016. The property on which the airport is located has served as an airport since the 1960's. Pursuant to MCL § 259.143, the Airport Authority has the authority to bring this action.

### B. THIRD-PARTY DEFENDANTS

13. The following statements, characterization and allegations regarding Third-Party Defendants are based upon information and belief, the allegations by the State of Michigan in the underlying Complaint and the following actions all pending in the United States District Court for the District of South Carolina seeking recovery for damages to the same natural resources alleged in the underlying Complaint:

(1) *Nessel, et al., v. 3M, et al.,*C.A. No. 1:21-cv-00205,

(2) *Nessel, et al., v. Chemguard Inc., et al.,* C.A. No. 1:20-cv-01080), and

(3) *Nessel, et al., v. E.I DuPont, et al.,* C.A. No. 1:21-cv-00787).

In general, the Third-Party Plaintiff alleges that the Third-Party Defendants designed, manufactured, formulated, marketed, promoted, distributed, and/or sold the Fluorosurfactant Products that have contaminated and continue to contaminate the Airport Authority Property, causing harm.

14. 3M: Third-Party Defendant 3M Company is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 3M Center, St. Paul, Minnesota 55144- 1000. 3M has manufactured, marketed, promoted, distributed, and/or sold AFFF that contained PFAS that was transported, stored, used, handled, trained with, used to test

6

equipment, released, spilled, otherwise discharged, and/or disposed in Oregon. 3M is registered to do business in Oregon.

15. AGC AMERICA: Third-Party Defendant AGC Chemical Americas, Inc. ("AGC America") is a Delaware corporation with its principal business office at 55 E. Uwchlan Avenue, Suite 201, Exton, Pennsylvania 19341. Upon information and belief, AGC America is a subsidiary of AGC, Inc., a Japanese corporation formerly known as Asahi Glass Company, Ltd.

16. ARCHROMA US: Third-Party Defendant Archroma U.S., Inc. ("Archroma US") is a Delaware corporation with its principal place of business located at 5435 77 Center Dr., #10, Charlotte, North Carolina 28217. Upon information and belief, Archroma U.S., Inc. is a subsidiary of Archroma Management, LLC, and supplied Fluorosurfactant Products for use in AFFF.

17. ARKEMA: Defendant Arkema, Inc. is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania 19406. Arkema, Inc. is an operating subsidiary of Arkema France, S.A.

18. BASF: Third-Party Defendant BASF Corporation ("BASF") is a Delaware corporation with its principal place of business at 100 Park Avenue, Florham Park, New Jersey 07932. Upon information and belief, BASF acquired Ciba-Geigy Corporation and/or Ciba Specialty Chemicals.

19. BUCKEYE: Third-Party Defendant Buckeye Fire Equipment Company ("Buckeye") is a foreign corporation organized and existing under the laws of the State of Ohio, with its principal place of business at 110 Kings Road, Mountain, North Carolina 28086. This Third-Party Defendant manufactured and sold AFFF that contained PFOA.

20. CARRIER: Third-Party Defendant Carrier Global Corporation ("Carrier") is a Delaware corporation with its principal place of business located at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418.

7

21. CHEMDESIGN: Third-Party Defendant Chemdesign Products, Inc. ("ChemDesign") is a Texas corporation with its principal place of business located at 2 Stanton Street, Marinette, Wisconsin 54143.

22. CHEMGUARD: Third-Party Defendant Chemguard, Inc. ("Chemguard") is a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143. This Third-Party Defendant manufactured and sold AFFF that contained PFOA.

23. CLARIANT: Third-Party Defendant Clariant Corp. ("Clariant") is a New York corporation with its principal place of business located at 4000 Monroe Road, Charlotte, North Carolina 28205.

24. CORTEVA, INC: Third-Party Defendant Corteva, Inc., ("Corteva") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805. In 2019, New DuPont spun off a new, publicly traded company, Corteva, which currently holds Old DuPont as a subsidiary. In connection with these transfers, Corteva assumed certain Old DuPont liabilities—including those relating to PFAS.

25. DUPONT DE NEMOURS, INC: Third-Party Defendant DuPont de Nemours, Inc. (i.e., New DuPont), f/k/a DowDuPont Inc., is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805. In 2015, after Old DuPont spun off Chemours, Old DuPont merged with The Dow Chemical Company and transferred Old DuPont's historic liabilities and assets to other entities, including New DuPont. In connection with these transfers, New DuPont assumed

8

certain Old DuPont liabilities—including those relating to PFAS. New DuPont does business throughout the United States, including in Michigan.

26. DYNAX: Third-Party Defendant Dynax Corp. ("Dynax") is a Delaware corporation with its principal place of business located at 103 Fairview Park Drive, Elmsford, New York 10523. Upon information and belief, this Third-Party Defendant manufactured Fluorosurfactant Products for use in AFFF.

27. EIDP, INC: Third-Party Defendant EIDP, Inc. (i.e., Old DuPont), f/k/a E. I. du Pont de Nemours and Company, is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805. Old DuPont has manufactured, marketed, promoted, distributed, and/or sold fluorochemicals and/or fluorosurfactants that contained PFAS used to manufacture AFFF, and those fluorochemicals, fluorosurfactants, and AFFF were transported, stored, used, handled, trained with, used to test equipment, released, spilled, otherwise discharged, and/or disposed in Michigan.

28. KIDDE PLC: Third-Party Defendant Kidde PLC Inc. ("Kidde PLC") is a Delaware corporation with its principal place of business located at 9 Farm Springs Road, Farmington, Connecticut 060. Upon information and belief, Kidde PLC was formerly known as Williams Holdings, Inc. and/or Williams US, Inc.

29. NATIONAL FOAM: Third-Party Defendant National Foam, Inc. ("National Foam") is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 141 Junny Road, Angier, North Carolina 27501. National Foam manufactures the Angus Fire brand of products and is the successor-in-interest to Angus Fire Armour Corporation

9

(collectively, "National Foam/Angus Fire"). This Third-Party Defendant manufactured and sold AFFF that contained PFOA.

30. THE CHEMOURS COMPANY: Third-Party Defendant the Chemours Company is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 1007 Market Street, Wilmington, Delaware 19899. In 2015, Old DuPont spun off its performance chemicals business to Chemours, along with vast environmental liabilities. Chemours has manufactured, marketed, promoted, distributed, and/or sold fluorosurfactants that contained PFAS used to manufacture AFFF, and those fluorosurfactants and AFFF were transported, stored, used, handled, trained with, used to test equipment, released, spilled, otherwise discharged, and/or disposed in Michigan.

31. TYCO: Third-Party Defendant Tyco Fire Products, LP ("Tyco") is a limited partnership organized and existing under the laws of the State of Delaware with its principal place of business located at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19446. Tyco is an indirect subsidiary that is wholly owned by Johnson Controls International P.L.C., an Irish public limited company listed on the New York Stock Exchange. Tyco manufactures the Ansul brand of products and is the successor-in-interest to the corporation formerly known as The Ansul Company ("Ansul") (hereinafter, Ansul and/or Tyco as the successor-in-interest to Ansul will be referred to collectively as "Tyco"). At all times relevant, Tyco manufactured, marketed, promoted, distributed, and/or sold fire suppression products, including AFFF that contained fluorocarbon surfactants containing PFAS.

32. UTC: Third-Party Defendant UTC Fire & Security Americas Corporation (f/k/a GE Interlogix, Inc.) ("UTC") is a North Carolina corporation with its principal place of business at

10

3211 Progress Drive, Lincolnton, North Carolina 28092. UTC was a subsidiary of United Technologies Corporation.

33. Upon information and belief, Third-Party Defendants, John Does 1-49, were manufacturers and/or sellers of AFFF products. Although the identities of the John Doe Third-Party Defendants are currently unknown, it is expected that their names will be ascertained during discovery, at which time the Plaintiff will move for leave of this Court to add those individuals' actual names to the Complaint as Third-Party Defendants.

34. Any and all references to a Third-Party Defendant or Third-Party Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates and divisions of the named Third-Party Defendants.

35. The term "Third-Party Defendants," without naming any specific one, refers to all Third-Party Defendants named in this Complaint jointly and severally. When reference is made to any act or omission of the Third-Party Defendants, it shall be deemed to mean that the officers, directors, agents, employees, or representatives of the Third-Party Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of Third-Party Defendants, and did so while acting within the scope of their employment or agency.

## III. JURISDICTION AND VENUE

36. Jurisdiction was asserted in the underlying complaint filed by Plaintiff EGLE on September 8, 2023, citing MCL 600.605, MCL 324.3115(1), and MCL 324.20137(5).

37. Venue was asserted in the underlying complaint filed by Plaintiff EGLE on September 8, 2023, citing MCL 324.3115(1).

11

## IV. FACTUAL ALLEGATIONS

### A. The Principal PFAS Contaminants at Issue: PFOA and PFOS.

38. The principal contaminants at issue in the case are PFOA and PFOS which fall within a class of chemical compounds known as PFAS.

39. PFOA and PFOS are stable, man-made chemicals. They are highly water soluble, persistent in the environment and resistant to biologic, environmental, or photochemical degradation. Because these compounds are water soluble and do not readily adsorb to sediments or soil, they tend to stay in the water column and can be transported long distances and have been found globally.

40. From the time these two compounds were first produced, information has since emerged showing negative health effects caused by exposure to PFOA and PFOS.[1] The EPA has warned that there is suggestive evidence of the carcinogenic potential for PFOA and PFOS in humans.

### B. Aqueous Film-Forming Foam (AFFF) was a Product Containing PFOS and/or PFOA at the Relevant Time Period.

41. AFFF is a water-based foam that was first developed in the 1960s to extinguish flammable liquid fuel fires at airports, among other places.

42. Generally, AFFF is used to extinguish fires, particularly fires that involve petroleum or other flammable liquids. AFFF is typically sprayed directly onto a fire, where it then works by coating the ignited fuel source, preventing its contact with oxygen, and suppressing combustion.

43. The AFFF products made by Third-Party Defendants during the relevant time period contained either or both PFOA and PFOS. AFFF produced, marketed, and/or sold by 3M was the

---

[1] See EPA, Fact Sheet PFOA & PFOS Drinking Water Health Advisories, EPA Document Number: 800-F-16-003, available at available at https://nepis.epa.gov/Exe/ZyPURL.cgi?Dockey=P100OR9W.txt (last accessed May 8, 2023).

only AFFF produced from fluorochemicals manufactured through electrochemical fluorination ("ECF"), a process that generates PFOS. PFHxS is also formed during this process. All other Third-Party Defendants used telomerization to produce AFFF. Fluorochemicals synthesized through telomerization degrade into PFOA, but not PFOS.

44. When used as the Third-Party Defendants intended and directed, the AFFF manufactured and/or sold by the Third-Party Defendants released PFOA, PFOS and other PFAS into the environment.

45. Once PFOA and PFOS are free in the environment, they do not hydrolyze, photolyze, or biodegrade under typical environmental conditions, and they are extremely persistent in the environment. As a result of their persistence, they are widely distributed throughout soil, air, groundwater, and surface water.

46. Despite having knowledge of this fact—as well as having knowledge regarding the toxic nature of AFFF made with PFOA and/or PFOS—Third-Party Defendants continued to manufacture, distribute and/or sell AFFF with PFOA and/or PFOS, which has ultimately led to the ongoing contamination and damages to Third-Party Plaintiff's Property.

47. Third-Party Defendants' Fluorosurfactant Products have been used for their intended purposes in the process of fire protection, training, and response activities within Michigan for many years. During these activities, Third-Party Defendants' Fluorosurfactant Products were used as directed and intended by the manufacturer, which allowed PFOA and PFOS to migrate through the subsurface and into the groundwater and surface water, enter into Third-Party Plaintiff's property, thereby contaminating Third-Party Plaintiff's Property.

48. Due to the chemicals' persistent nature, among other things, these chemicals have caused, and continue to cause, injury and damage to Third-Party Plaintiff's Property and resources.

13

## C. **Third-Party Defendants' Knowledge and Concealment of the Dangers Involved.**

49. On information and belief, by the 1970s, Third-Party Defendants knew, or reasonably should have known, among other things, that: (1) PFOA and PFOS are toxic; and (2) when sprayed in the open environment per the instructions given by the manufacturer, PFOA and PFOS migrate through the subsurface, mix easily with surface water and groundwater, resist natural degradation, render drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense.

50. Based on information and belief, in 2000, after communications from the U.S. EPA, 3M announced that it was phasing out PFOS and U.S. production of PFOS; 3M's PFOS-based AFFF production did not fully phase out until 2002.

51. After 3M exited the AFFF market in the United States, the remaining AFFF manufacturer Third-Party Defendants continued to manufacture and sell AFFF containing PFAS.

52. From 1951, Old DuPont, and on information and belief, Chemours, designed, manufactured, marketed, and sold Fluorosurfactant Products, including Teflon nonstick cookware, and more recently PFAS feedstocks, such as Forafac 1157 N, for the use in the manufacture of AFFF products.

53. Based on information and belief, by no later than 2001, Old DuPont manufactured, produced, marketed, and sold Fluorosurfactant Products and/or PFAS feedstocks to some or all of the AFFF product manufacturers for use in their AFFF products that were discharged into the environment and contaminated Third-Party Plaintiff's Property and resources.

54. Old DuPont had been studying the potential toxicity of PFOA since at least the 1960s and knew that it was contaminating drinking water drawn from the Ohio River and did not disclose

14

to the public or to government regulators what they knew about the substance's potential effects on humans, animals, or the environment.

55. By December 2005, the EPA uncovered evidence that Old DuPont concealed the environmental and health effects of PFOA, and the EPA announced the "Largest Environmental Administrative Penalty in Agency History." The EPA fined Old DuPont $16,500,000 for violating the Toxic Substances Control Act "Section 8(e)—the requirement that companies report to the EPA substantial risk information about chemicals they manufacture, process or distribute in commerce."

56. Third-Party Defendants knew, or reasonably should have known, at all times relevant to this action that it was substantially certain that their acts and omissions as set forth herein would cause extensive contamination of Third-Party Plaintiff's Property and otherwise cause the injuries described herein.

57. Notwithstanding their respective knowledge of the dangers involved with AFFF containing PFOA and/or PFOS, Third-Party Defendants negligently and carelessly: (1) designed, manufactured, marketed, and/or sold AFFF containing PFOA and/or PFOS; (2) issued instructions on how AFFF should be used and disposed of (namely, by washing the foam into the soil and/or waste water disposal systems), thus improperly permitting PFOA and/or PFOS to contaminate soil, surface water, and groundwater; (3) failed to recall and/or warn users of AFFF, negligently designed products containing or degrading into PFOA and/or PFOS, of the dangers of soil, surface water, and groundwater contamination as a result of the standard use and disposal of these products; and, (4) further failed and refused to issue the appropriate warnings and/or recalls to the users of AFFF containing PFOA and/or PFOS, notwithstanding the fact that Third-Party Defendants knew the identity of the purchasers of the AFFF containing PFOA and/or PFOS.

58. As a direct result of Third-Party Defendants' acts alleged in this Complaint, Third-Party Plaintiff's property has been contaminated, and will continue to be contaminated, with PFOS. As a direct and proximate result, Third-Party Plaintiff must assess, evaluate, investigate, monitor, remove, clean up, correct, and remediate PFOS contamination of its property at significant expense, loss and damage to Third-Party Plaintiff.

59. Third-Party Defendants had a duty to evaluate and test such products adequately and thoroughly to determine their environmental fate and transport characteristics and potential human health and environmental impacts before they sold such products, but they breached this duty. Third-Party Defendants moreover breached their duty to minimize the environmental harm caused by PFOA and PFOS. Moreover, Third-Party Defendants failed to warn Third-Party Plaintiff of the known risks for environmental and health hazards arising from the usage of Third-Party Defendants' Fluorosurfactant Products in their intended manner for its intended purpose.

**D.   The Harm to Third-Party Plaintiff Resulting from PFOA and PFOS Contamination.**

60. The detection and/or presence of PFAS, and the threat of further detection and/or presence of PFAS, in Third-Party Plaintiff's Property and resources in varying amounts and at varying times has resulted, and will continue to result, in injury and damage to Third-Party Plaintiff.

61. Third-Party Plaintiff has conducted and continues to conduct sampling, studies, and investigations related to PFAS, which requires funding by Third-Party Plaintiff, including costs to conduct sampling, costs for its personnel to supervise the assessments, costs to develop PFAS treatment approaches, and costs to analyze available alternatives.

16

62. The injuries to Third-Party Plaintiff caused by Third-Party Defendants' conduct constitute an unreasonable interference with, and damage to, Third-Party Plaintiff's property and resources.

63. Through this action, Third-Party Plaintiff seeks to recover damages arising from continuous and ongoing contamination of Third-Party Plaintiff's Property by Third-Party Defendants' Fluorosurfactant Products. Such damages include, but are not limited to, the past and future incurred costs associated with the investigation, remediation, restoration, monitoring, and treatment of Third-Party Plaintiff's Property as well as damages and liability arising from the underlying Complaint brought by the State of Michigan.

**E. The Airport Authority's Use of AFFF As Required by FAA.**

64. AFFF is used to extinguish liquid fuel fires which may occur in connection with aircraft accidents. Per FAA regulations, Part 139 Airports such as the Gerald R. Ford International Airport, were required to regularly spray and discharge AFFF for training and equipment testing purposes.

65. AFFF was originally developed for the United States military in the 1940's. Its design and manufacturing has been governed by rigorous military specifications established by the Naval Sea Systems Command. The Department of Defense ("DOD") specification related to AFFF, MIL-PRF-24385 ("DOD MIL-SPEC"), was first promulgated in 1969.

66. The DOD MIL-SPEC required that AFFF contained PFAS. The DOD MIL-SPEC was in effect at all times pertinent to this case.

67. FAA regulations applicable to the Airport Authority require that aircraft rescue and firefighting equipment ("ARFF") carry AFFF. 14 CFR § 139.317.

68. The AFFF is used in fire extinguishment by spraying it through a fire hose, appliance, or nozzle, either on hoses or truck mounted turrets.

17

69. The FAA has issued CertAlerts which contain specifications, methods, and procedures for ARFF equipment and extinguishing agents that are acceptable to the FAA. 14 CFR § 139.317(j).

70. The FAA required that the Airport Authority use AFFF that met the DOD requirements contained in the DOD MIL-SPEC including that the AFFF contain PFAS. *See e.g.* CertAlert No. 16-05 Update on Mil-Spec Aqueous Film Forming Foam (Sept. 1, 2016).

71. Pursuant to FAA and Michigan Department of Transportation ("MDOT") requirements, the Airport Authority was obligated to train with, calibrate and test its firefighting equipment routinely, and respond to aircraft emergencies only with the DOD MIL-SPEC AFFF.

72. The FAA conducts annual inspections to ensure that the Airport Authority meets applicable regulations.

73. During these inspections, the FAA inspectors review the Airport Authority's records of foam discharge for calibration, confirm proportioning, and periodically require the Airport Authority to spray AFFF to demonstrate to FAA inspectors that the Airport Authority is able to perform firefighting activities and properly conduct equipment testing and calibration.

74. The FAA recommends firefighting vehicle system testing intervals occur within six months of the FAA certification safety inspections. *See e.g.* CertAlert No. 19-01 Aqueous Film Forming Foam Testing at Certificated Part 139 Airports (Jan. 17, 2019).

75. If an airport operator does not conduct testing within these intervals, the FAA inspectors require "the airport operator to discharge AFFF during the airport's periodic inspection." *See e.g.* CertAlert No. 19-01 Aqueous Film Forming Foam Testing at Certificated Part 139 Airports (Jan. 17, 2019).

76. Because the Airport Authority was required to comply with FAA and MDOT regulations, the Airport Authority was obligated to (1) use AFFF that contained PFAS and (2) regularly test its

18

ARFF equipment to ensure it was capable of safely responding to a fire which included discharging AFFF containing PFAS.

## FIRST CAUSE OF ACTION
### (Contribution Under Part 201 of NREPA)

77. Third-Party Plaintiff, the Airport Authority, realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this cause of action.

78. The Airport Authority is the named Defendant in the underlying EGLE Complaint.

79. The EGLE Plaintiffs seek monetary damages and other relief as a result of response activities and for injury to, loss of, or destruction of natural resources from the Airport Authority.

80. The Airport Authority was directed in its AFFF activities by FAA and MDOT.

81. Third-Party Defendants supplied and otherwise controlled the sale and distribution of PFAS containing products and chemicals released or threatened to be released to the Airport Authority's Property related to AFFF making Third-Party Defendants "arrangers" as defined in NREPA, MCL 324,20126(1)(d).

82. Third-Party Defendants' actions were a substantial factor in causing, contributing to, and/or proximately causing any alleged PFAS release or threat of such a release at GFIA.

83. The Airport Authority was a non-negligent actor with respect to the acts or omissions that resulted in the alleged damage to the EGLE Plaintiffs.

84. To the extent the Airport Authority is found liable in the EGLE Complaint, Third-Party Defendants shall be deemed liable in an amount to be proven at trial for Third-Party Defendants' relative degree of responsibility.

19

## SECOND CAUSE OF ACTION
### (Cost-Recovery Under Part 201 of NREPA)

85. Third-Party Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this cause of action.

86. The Airport Authority has reasonably incurred considerable costs of response addressing the potential PFAS detections and such costs will continue to be incurred.

87. The Airport Authority was being directed in its AFFF activities by FAA and MDOT.

88. Third-Party Defendants produced, supplied and distributed their AFFF products containing PFAS chemicals that were released or threatened to be released at the GFIA making Defendants an "arranger" as defined in NREPA, MCL 324,20126(1)(d).

89. Third-Party Defendants' actions were a substantial factor in causing, contributing to, and/or proximately causing any alleged PFAS release or threat of such a release at GFIA.

90. The Airport Authority was a non-negligent actor with respect to the acts or omissions that resulted in the alleged damage to the EGLE Plaintiffs.

91. Third-Party Defendants are liable to the Airport Authority for all reasonably incurred costs of response to date and in the future at GFIA related to alleged AFFF contamination.

## THIRD CAUSE OF ACTION
### (Indemnification)

92. Third-Party Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this cause of action.

93. The Airport Authority is the named Defendant in the EGLE Complaint.

94. The EGLE Plaintiffs seek money damages and other damages against the Airport Authority.

95. The Airport Authority was being directed in its AFFF activities by FAA and MDOT.

20

96. Third-Party Defendants' actions producing, supplying and distributing AFFF Products caused the potential PFAS detections at GFIA.

97. Third Party Defendants' actions caused the alleged damage to the EGLE Plaintiffs.

98. Any active tortious conduct which resulted in the alleged damage to the EGLE Plaintiffs is attributed solely to Third-Party Defendants and MDOT.

99. The Airport Authority is free of active or causal tortious conduct with respect to the acts or omissions that resulted in the alleged damage to the EGLE Plaintiffs.

100. To the extent the Airport Authority is found liable to the EGLE Plaintiffs, the basis of such liability would solely be on account of other's acts or omissions including Third-Party Defendants.'

101. It would be unjust to require the Airport Authority to satisfy any judgment entered against it as a result of the EGLE Complaint as opposed to the Third-Party Defendants.

102. To the extent the Airport Authority is found liable as a result of the EGLE Complaint, the Third-Party Defendants are liable in the full amount of the Airport Authority under principals of common law indemnification.

## FOURTH CAUSE OF ACTION
### (Strict Products Liability - Design Defect)

103. Third-Party Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this cause of action.

104. Third-Party Defendants were in the business of producing, making, fabricating, constructing, designing, marketing, and selling AFFF containing PFOA and PFOS and other PFAS.

105. All of Third-Party Defendants' AFFF products were manufactured for placement into trade or commerce.

21

106. Third-Party Defendants' AFFF products were sold in a defective condition unreasonably dangerous to any user or customer.

107. As manufacturers, Third-Party Defendants owed a duty to all persons whom its products might foreseeably harm, including Third-Party Plaintiff, not to market any product which is unreasonably dangerous in design for its reasonably anticipated use.

108. Third-Party Defendants were in the business of selling and manufacturing AFFF products for use in controlling and extinguishing aviation, fuel, and other shallow spill fires.

109. The AFFF products reached the consumers or users in the condition they were sold.

110. By manufacturing and selling PFAS-containing AFFF, Third-Party Defendants warranted that such AFFF was merchantable, safe, and fit for ordinary purposes.

111. Third-Party Defendants breached that warranty as PFAS-containing AFFF is unreasonably dangerous for its reasonably anticipated uses because PFAS chemicals cause environmental contamination, even when used in their foreseeable and intended manner.

112. Third-Party Defendants knew of these risks associated with PFOA and PFOS, and failed to use the level of reasonable care owed to Third-Party Plaintiff in the design of its AFFF products.

113. At all times, Third-Party Defendants could make AFFF that did not contain PFOA/PFOS. Reasonable alternative and cost-effective designs existed which could prevent the Third-Party Plaintiff's damage.

114. The risks posed by PFAS-containing AFFF far outweigh the products' utility as a flame-control chemical.

115. The likelihood that PFOA and/or PFOS-containing AFFF would be spilled, discharged, disposed of, or released onto land and contaminate the Third-Party Plaintiff's property and the gravity of that damage far outweighed any burden on Third-Party Defendants to adopt an

22

alternative design, and outweighed the adverse effect, if any, of such alternative design on the utility of the product.

116. Upon information and belief, users and consumers of Fluorosurfactant Products relied on Third-Party Defendants' implied warranty that their AFFF products were safe for use in outdoor fire emergency scenarios and fire control exercise.

117. As a direct and proximate result of Third-Party Defendants' unreasonably dangerous design, manufacture, and sale of PFAS-containing AFFF, the Third-Party Plaintiff has suffered, and continues to suffer, property damage requiring investigation, remediation, and monitoring costs to be determined at trial.

118. Third-Party Defendants knew that it was substantially certain that its acts and omissions described above would threaten public health and cause extensive contamination of property, including surface waters and groundwater collected for drinking. Third-Party Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for the Third-Party Plaintiff's property and resources.

## FIFTH CAUSE OF ACTION STRICT PRODUCTS LIABILITY
### (Failure to Warn)

119. Third-Party Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

120. Third-Party Defendants' AFFF products were sold in a defective condition unreasonably dangerous to any user or consumer.

121. As a manufacturer of PFAS-containing AFFF, each Third-Party Defendant had a duty to provide adequate, reasonable warnings of the risks of these products to all persons whom its product might foreseeably harm, including Third-Party Plaintiff, the public, and public officials.

23

122. As a manufacturer of PFAS-containing AFFF, each Third-Party Defendant had a duty to provide adequate, reasonable warnings as to the dangers inherent in the improper use of these products to all persons whom its product might foreseeably harm, including Third-Party Plaintiff, the public, and public officials.

123. Third-Party Defendants were in the business of selling and manufacturing AFFF products for use in controlling and extinguishing aviation, fuel, and other shallow spill fires.

124. The AFFF products reached the customers or users in the condition they were sold.

125. PFAS-containing AFFF is unreasonably dangerous for its reasonably anticipated uses because PFAS chemicals cause extensive environmental contamination, even when used in their foreseeable and intended manner.

126. Third-Party Defendants knew of the health and property damage risks associated with PFOA/PFOS- containing AFFF and breached their duty to warn by failing to provide a warning that would lead an ordinary reasonable user or handler of a product to contemplate the dangers associated with PFOA/PFOS- containing AFFF or an instruction that would have allowed Third-Party Plaintiff to avoid the damage to its property.

127. Third-Party Plaintiff would have heeded legally adequate warnings or would have taken steps to prevent potential exposure and contamination of its Property.

128. As a direct and proximate result of Third-Party Defendants' failure to warn, Third-Party Plaintiff has suffered, and continues to suffer, property damage requiring investigation, remediation, and monitoring costs to be determined at trial.

129. Third-Party Defendants knew that it was substantially certain that its acts and omissions described above would threaten public health and cause extensive contamination of subterranean drinking water supplies. Third-Party Defendants committed each of the above-described acts and

24

omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for the Third-Party Plaintiff's property and resources.

## SIXTH CAUSE OF ACTION
### (Negligence)

130. Third-Party Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

131. As a manufacturer and seller of PFAS-containing AFFF, each Third-Party Defendant owed a duty to Third-Party Plaintiff and to all persons whom its products might foreseeably harm to exercise due care in the formulation, manufacture, sale, labeling, warning, and use of PFAS-containing AFFF.

132. Third-Party Defendants breached this duty to Third-Party Plaintiff by failing to exercise due care in the formulation, manufacture, sale, labeling, warning, and use of PFAS-containing AFFF.

133. Third-Party Defendants knew or should have known that PFAS were leaching from AFFF used in outdoor fire control exercises and fire emergency scenarios and contaminating water resources.

134. Even though Third-Party Defendants knew that PFAS can contaminate water resources, Third-Party Defendants negligently: (a) designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold PFAS-containing AFFF; (b) issued instructions on how AFFF should be used and disposed of, thus improperly permitting PFOA and/or PFOS to contaminate water resources in and around the Third-Party Plaintiff's Property; (c) failed to recall and/or warn the users of AFFF of the dangers of surface water and groundwater contamination as a result of standard use and disposal of this product; and, (d) failed and refused

25

to issue the appropriate warning and/or recalls to the users of PFAS-containing AFFF, notwithstanding the fact that Third-Party Defendants knew the identity of the purchasers of the AFFF.

135. As a direct and proximate result of Third-Party Defendants' negligence, the Third-Party Plaintiff has suffered, and continues to suffer, property damage requiring investigation, remediation, and monitoring costs to be determined at trial.

136. Third-Party Defendants knew that it was substantially certain that its acts and omissions described above would cause contamination of the human environment. Third-Party Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the Third-Party Plaintiff's property rights and resources.

## SEVENTH CAUSE OF ACTION
### (Trespass)

137. Third-Party Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

138. Third-Party Plaintiff was the owner, operator, and actual possessor of real property and improvements used for commercial aviation at the time Third-Party Defendants' trespass occurred.

139. Third-Party Defendants manufactured, distributed, marketed, and promoted PFAS-containing AFFF with the actual knowledge and/or substantial certainty that PFAS-containing AFFF would, through normal use, release PFAS that would migrate into soil, surface water, and groundwater, causing contamination.

140. Third-Party Defendants negligently, recklessly, and/or intentionally produced and marketed PFAS-containing AFFF in a manner that caused PFAS to contaminate and enter Third-Party Plaintiff's Property without a legal right to do so.

26

141. As a direct and proximate result of Third-Party Defendants' trespass, Third-Party Plaintiff has suffered and continues to suffer property damage requiring investigation, remediation, and monitoring costs to be determined at trial.

142. Third-Party Defendants knew that it was substantially certain that its acts and omissions described above would threaten public health and cause contamination of property, including surface water, groundwater and stormwater. Third-Party Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the Third-Party Plaintiff's property and resources.

## PRAYER FOR RELIEF

Third-Party Plaintiff prays for judgment against Third-Party Defendants, jointly and severally, as follows:

1. For contribution, cost-recovery and indemnification for any judgment or assessment of damages against the Airport Authority in the underlying Complaint.

2. For compensatory damages according to proof including, but not limited to:

(a) costs and expenses related to the past, present, and future investigation, sampling, testing, and assessment of the extent of PFOA/PFOS contamination in Third-Party Plaintiff's Property; (b) costs and expenses related to past, present, and future treatment and remediation of PFOA and/or PFOS contamination of Third-Party Plaintiff's Property; (c) costs and expenses related to past, present, and future installation and maintenance of monitoring mechanisms to assess and evaluate PFOA and/or PFOS in Third-Party Plaintiff's Property;

3. Punitive damages;

4. Consequential damages;

27

5. Pre-judgment and post-judgment interest;

6. Any other and further relief as the Court deems just, proper, and equitable.

/s/ John A. Sheehan
John A. Sheehan, Esq, Temporary MI Bar P#00349
Earth & Water Law LLC
1455 Pennsylvania Ave. N.W., Suite 400
Washington, DC 20004
(301) 980-5032
john.sheehan@earthandwatergroup.com

*Attorney for Third-Party Defendant*

28